UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL FIORITO, | Case No. 22-CV-0923 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| MR. DRUMMY; MS. OETTERER; MS. SOUTHWICK; KARA ANDERAL; MS. HARRIS; and ANDREW M. LUGER, | |
| Defendants. | |
| MICHAEL FIORITO, | Case No. 22-CV-0925 (PJS/TNL) |
| Plaintiff, | |
| v. | |
| MR. LILO; SIS OFFICER JACOBSON; SIS OFFICER DAWSON; and JOHN DOE, | |
| Defendants. | |
| MICHAEL FIORITO, | Case No. 22-CV-0927 (PJS/TNL) |
| Plaintiff, | |
| v. | |
| HEATHER KENSY and MR. ANDERSON, Case Manager, | |
| Defendants. | |

Michael Fiorito, *pro se*.

Kristen Elise Rau, UNITED STATES ATTORNEY'S OFFICE, for defendants.

In early 2022, plaintiff Michael Fiorito—who was at that time a prisoner at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone")—filed four lawsuits in Minnesota state court alleging (broadly speaking) that officials at FCI-Sandstone had violated his civil rights. Defendants removed the four cases to this District pursuant to 28 U.S.C. §§ 1441 and 1442(a)(1). One of those cases—*Fiorito v. Lilo*, No. 22-CV-0924 (PJS/TNL)—has since been voluntarily dismissed by Fiorito. Now before the Court are defendants' motions to dismiss and for summary judgment in the other three cases. For the reasons explained below, defendants' motions are granted and these matters are dismissed.

I.  BACKGROUND

There is substantial overlap among Fiorito's three complaints, which the Court will summarize collectively.

By his own admission, *see Fiorito v. Drummy* ("*Fiorito I*"), No. 22-CV-0923 (PJS/TNL), Pl. Ex. at ¶ 2 [ECF No. 1-1 at 23], Fiorito has filed an extraordinary number of administrative grievances and an extraordinary number of lawsuits during his time in prison. The core claim in each of the three actions now before the Court is that officials at FCI-Sandstone have retaliated against Fiorito for filing those grievances and

2

lawsuits. The alleged retaliation has taken various forms, including placement in administrative segregation and threats of further discipline or even criminal prosecution. In each of the three lawsuits now before the Court, Fiorito contends that the alleged retaliation amounts to a violation of his federal constitutional rights actionable pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

Along with this core retaliation claim, Fiorito raises a handful of ancillary claims. These ancillary claims differ somewhat from case to case. Fiorito is in prison because he was found guilty of mail fraud,[1] *see United States v. Fiorito*, No. 07-CR-0212 (PJS/JSM) (D. Minn.), and officials at FCI-Sandstone apparently accused Fiorito of engaging in extortionary behavior through the mail while he was detained there. Purportedly fearing that he will be prosecuted or disciplined, Fiorito filed *Fiorito I*, in which he contends that "[t]he Federal mail and wire fraud statutes, the Hobbs Act, & the Federal

---

[1] Fiorito describes the conduct for which he was convicted as follows: "The U.S. Attorney for the District of Minnesota previously prosecuted Plaintiff for mail fraud based on interrogatories mailed through counsel in the ordinary course of a garden variety eviction action and obtained a 21 year sentence." *Fiorito v. Drummy*, No. 22-CV-0923 (PJS/TNL), Compl. ¶ 32 [ECF No. 1-1]. This is not remotely close to being accurate. For one thing, Fiorito's misconduct was far more wide-ranging than he represents; he is in prison because he stole a lot of money from a lot of vulnerable people. *See United States v. Fiorito*, 640 F.3d 338, 343 (8th Cir. 2011) ("With some variation between victims, Fiorito's basic scheme was to convince financially desperate homeowners to refinance or sell their homes to him and then clandestinely intercept their proceeds checks— representing the equity realized in the sale or refinance—and deposit them into his bank account."); *id.* at 351 (noting that Fiorito's codefendant "testified that she and Fiorito 'were looking for vulnerable, poor, dumb people so that they wouldn't be able to catch on to our scheme.'"). For another thing, the undersigned sentenced Fiorito to 22.5 years in prison, not 21. *See id.* at 344.

Bureau of Prisons Inmate Discipline Program" are each unconstitutionally vague, and he asks the Court to prohibit prison officials from ever disciplining him and the United States Attorney's Office from ever prosecuting him for violating one of those provisions. *Fiorito I*, Compl. ¶ 51 [ECF No. 1-1].  In *Fiorito v. Lilo* ("*Fiorito II*"), No. 22-CV-0925 (PJS/TNL), Fiorito raises two additional *Bivens* claims:  first, that administrative segregation at FCI-Sandstone amounts to cruel and unusual punishment and, second, that he has been denied access to the courts by prison officials.  Fiorito also raises a number of claims under state law, including intentional and negligent infliction of emotional distress.  Finally, in *Fiorito v. Kensy* ("*Fiorito III*"), No. 22-CV-0927 (PJS/TNL), Fiorito renews several of these claims (or close variations of these claims) and adds the claim that he has been subjected to harsher disciplinary treatment than other prisoners in violation of the Equal Protection Clause of the federal constitution.  *See Fiorito III*, Am. Compl.  ¶¶ 20-21 [ECF No. 14].

## II.  ANALYSIS

### A.  Sovereign Immunity

As described above, Fiorito raises two categories of claims in these lawsuits: (1) claims of federal constitutional violations and (2) claims of state-law violations. Before turning to those claims, the Court notes that all of the defendants named in these lawsuits are alleged to have acted unlawfully in the course of performing their duties as employees of the federal government.  "[I]n the context of lawsuits against state and

federal employees or entities, courts should look to whether the sovereign is the real party in interest to determine whether sovereign immunity bars the suit." *Lewis v. Clarke*, 581 U.S. 155, 161-62 (2017).  Fiorito's claims may go forward only if the United States is not the real party in interest or, if the United States is the real party in interest, only if the sovereign immunity of the United States has been waived.

The bulk of Fiorito's pleadings concern claims that defendants have violated his federal constitutional rights.  In *Bivens*, the Supreme Court "authorized a damages action against federal officials for alleged violations of the Fourth Amendment." *Egbert v. Boule*, 142 S. Ct. 1793, 1799 (2022).  Although *Bivens* itself concerned only a claim of Fourth Amendment violations, any "action to recover damages from federal officials who allegedly violated the constitutional rights of the plaintiff while acting under color of federal authority" has come to be referred to as a "*Bivens* action." *Jackson v. Santini*, No. 15-CV-2151 (PJS/TNL), 2017 WL 992410, at *1 n.1 (D. Minn. Mar. 14, 2017).

Because the true party in interest in a *Bivens* action is the federal employee himself or herself rather than the federal government, *Bivens* claims lie outside the ambit of sovereign immunity.  *See Hill v. Holinka*, No. 06-4720 (PJS/JJG), 2008 WL 549928, at *2 (D. Minn. Feb. 27, 2008) ("Because a proper *Bivens* claim can only involve the personal liability of a government employee, sovereign immunity cannot attach.").  This principle can also be stated in the converse:  Where a litigant seeks relief

5

that extends beyond holding the individual employee personally liable for money damages, it is the federal government (not the individual employee) that is the true party in interest, the claim does not arise under *Bivens*, and sovereign immunity bars the claim unless sovereign immunity has been waived. Thus, for example, a litigant cannot seek injunctive relief under *Bivens*, because injunctive relief directing an agent of the federal government to act in a specific way in his or her capacity as a federal agent would amount to relief against the United States itself. *See, e.g.*, *Jones v. Fedo*, No. 20-CV-2168 (WMW/HB), 2021 WL 7287670, at *7 (D. Minn. Dec. 31, 2021), *report and recommendation adopted*, 2022 WL 673261 (D. Minn. Mar. 7, 2022).

One such waiver of sovereign immunity—the only waiver relevant to Fiorito's three lawsuits now before the Court—can be found in the Federal Tort Claims Act ("FTCA"), which permits "persons injured by federal-employee tortfeasors to sue the United States for damages in federal district court." *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011). The FTCA, however, is a mixed blessing for would-be claimants. First, the FTCA, with only a few minor exceptions (including *Bivens* claims), "is exclusive of any other civil action or proceeding for money damages." 28 U.S.C. § 2679(b)(1) ("Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred."). Second, the federal government has waived sovereign immunity through the FTCA only with respect to

6

*some* state-law claims, with many other claims remaining subject to dismissal on jurisdictional grounds. *See* 28 U.S.C. § 2680. Third, the FTCA requires that would-be litigants present their claims for relief to the appropriate federal agency before seeking relief in court. *See* 28 U.S.C. § 2675(a). Because the federal government has waived sovereign immunity only when the claimant has administratively exhausted his claims for relief, the administrative-exhaustion requirement is jurisdictional. *See Mader*, 654 F.3d at 808. Fourth, the FTCA waives sovereign immunity only insofar as the claimant seeks monetary damages. *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 863 (10th Cir. 2005) (noting that district court "lacks subject matter jurisdiction under the FTCA to provide injunctive and declaratory relief").

Sovereign immunity acts as a kind of dark matter upon Fiorito's lawsuits, exerting force even when unseen. His *Bivens* claims are not foreclosed by sovereign immunity—but, to successfully dodge sovereign immunity through *Bivens*, Fiorito must show that his claims of constitutional violations are cognizable under *Bivens*. If Fiorito cannot raise his claims under *Bivens*, then he must show that the government has waived sovereign immunity for those claims. In some circumstances, the FTCA acts as such a waiver of sovereign immunity—but, to establish that the waiver applies to one of his claims, Fiorito must show that he has followed every jot and tittle of the FTCA with respect to that claim. That he cannot do.

### B. Bivens *Claims*

Fiorito alleges that defendants have violated his federal constitutional rights by (1) retaliating against him for having filed lawsuits and pursued administrative grievances; (2) denying him due process before removing him to administrative segregation; (3) treating him more severely than other prisoners during disciplinary proceedings; (4) denying him access to the courts; and (5) threatening him with discipline and potential criminal prosecution under laws and regulations that Fiorito believes to be unconstitutionally vague. Defendants move to dismiss Fiorito's *Bivens* claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Fiorito has failed to state a claim on which relief may be granted.[2]

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed,

---

[2] Defendants in the alternative seek summary judgment on the grounds that Fiorito has not exhausted administrative remedies for his claims. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Unlike the exhaustion requirement of the FTCA, the exhaustion requirement of § 1997e(a) is not jurisdictional, *see Chelette v. Harris*, 229 F.3d 684, 687 (8th Cir. 2000), and therefore the Court is not required to examine whether Fiorito has exhausted his claims for relief before proceeding to the question of whether he has stated a claim on which relief may be granted, *see* 42 U.S.C. § 1997e(c)(2).

8

they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face." *Id*. at 570.  In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  "[P]ro se complaints are to be construed liberally, [but] they still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004) (citation omitted).

There are two major problems with Fiorito's *Bivens* claims.  The first is that the vast majority of the relief sought by Fiorito is injunctive or declaratory in nature,[3] not monetary.  As explained above, however, injunctive and declaratory relief are outside the scope of *Bivens*.  *See Jones*, 2021 WL 7287670, at *7.  This limitation on the scope of *Bivens* by itself wipes out much of this litigation.

The second problem is that the scope of *Bivens* has been cabined in recent years entirely—or very nearly entirely—to only the few contexts in which the Supreme Court has already recognized a *Bivens* remedy.  *Egbert*, 142 S. Ct. at 1802 ("Over the following decade, the Court twice again fashioned new causes of action under the Constitution—first, for a former congressional staffer's Fifth Amendment sex-discrimination claim; and second, for a federal prisoner's inadequate-care claim under the Eighth

---

[3] Fiorito explicitly requests monetary relief only in *Fiorito II*.  In his other two pleadings, Fiorito requests injunctive relief, declaratory relief, and "other and further relief as this Court deems just and proper."  *Fiorito I*, Compl. at 19; *see also Fiorito III*, Compl. at 16.

Amendment." (citations omitted)).  Unless a claim arises in one of the three already recognized *Bivens* contexts, "a *Bivens* remedy is unavailable if . . . the Judiciary is at least arguably less equipped than Congress to weigh the costs and benefits of allowing a damages action to proceed."  *Id.* at 1803 (quotations omitted).  If there "is any reason to think that Congress might be better equipped to create a damages remedy," *id.*, then relief under *Bivens* is not available.

None of Fiorito's claims falls within the three recognized *Bivens* contexts.  Fiorito does not allege that law-enforcement officials have violated his Fourth Amendment rights through an unlawful search or seizure, which is the context of *Bivens* itself.  Fiorito does not allege that he has suffered sex discrimination, which is the context of *Davis v. Passman*, 442 U.S. 228 (1979).  And Fiorito's claims in these lawsuits are not predicated on allegedly inadequate care, which is the context of *Carlson v. Green*, 446 U.S. 14 (1980).[4]

Fiorito is therefore seeking expansion of the *Bivens* remedy to a novel context.  This is a heavy lift.  Although the Supreme Court has not foreclosed the possibility that the *Bivens* remedy might be appropriate in contexts other than those of *Passman*, *Carlson*, and *Bivens* itself, the Supreme Court has also made clear that any such

---

[4] To be sure, Fiorito does allege that prison officials have failed to provide him with adequate medical care, but only to explain why he filed the grievances that lead to the alleged retaliation that is the subject of these lawsuits.  The alleged lack of medical care is the subject of many of Fiorito's *other* lawsuits, but it is not the subject of these lawsuits.

expansion would be appropriate only in extraordinarily rare circumstances. *Egbert*, 142 S. Ct. at 1803-04. The circumstances in which such an expansion of *Bivens* would be appropriate for federal prisoners are rarer still, as an administrative-remedy process is available for such claims (and may act as an alternative to relief under *Bivens*), and as the existence of alternative remedies in *Egbert* was sufficient to "independently foreclose a *Bivens* action." *Id*. at 1806; *accord Bulger v. Hurwitz*, 62 F.4th 127, 140-41 (4th Cir. 2023); *Bland v. U.S. Marshals Serv.*, No. 2:22-CV-0886 (JAD/DJA), 2023 WL 3251414, at *4 (D. Nev. May 3, 2023) (collecting cases).

Accordingly, it is difficult to see how any of Fiorito's constitutional claims could meet the rigorous requirements for expanding *Bivens* to new contexts—and, not surprisingly, courts have consistently declined to expand *Bivens* to the contexts in which Fiorito now seeks relief. *See, e.g.*, *Pitts v. Hill*, No. 22-CV-0055 (SPM), 2023 WL 3585308, at *3-4 (S.D. Ill. May 22, 2023) (declining to extend *Bivens* to class-of-one equal-protection claim similar to that raised by Fiorito); *Cunningham v. U.S. Dep't of Housing & Urban Dev.*, No. 23-CV-0534, 2023 WL 2955895, at *6 (E.D. Penn. Apr. 14, 2023) (noting that "courts have declined to extend *Bivens* to claims alleging denial of access to the courts"). In fact, with respect to the retaliation claim that is at the core of Fiorito's complaints, the Supreme Court expressly said in *Egbert* that a remedy under *Bivens* is not available. *See* 142 S. Ct. at 1807 ("We also conclude that there is no *Bivens* cause of action for Boule's First Amendment retaliation claim.").

The scope of *Bivens* is not the only limitation on Fiorito's constitutional claims—for example, Fiorito's allegations, accepted as true, would not amount to an even arguable violation of his constitutional rights in some of the respects that he has alleged[5]—but it is sufficient. Fiorito cannot plausibly plead a violation of his constitutional rights that is consistent with the relief available to him under *Bivens*, and therefore his federal constitutional claims are dismissed with prejudice.

### C. State-Law Claims (Federal Tort Claims Act)

What remains of these actions after dismissal of Fiorito's constitutional claims is a smattering of claims arising under Minnesota state law. Fiorito can bring these claims, if at all, only pursuant to the FTCA.[6] *See* 28 U.S.C. § 2679(b)(1) ("Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to

---

[5] Fiorito had no constitutional entitlement to any procedural protections before being briefly placed in administrative segregation, *see Sandin v. Conner*, 515 U.S. 472, 485-86 (1995), and therefore defendants could not have violated Fiorito's Due Process rights in this respect. Fiorito's claim that the laws against wire and mail fraud and prison regulations against extortion are unconstitutionally vague is itself vague. And Fiorito's access-to-the-courts claim—the premise of which is that the Federal Bureau of Prisons is inhibiting his ability to litigate by limiting him to the purchase of only three books of stamps per week, *see Fiorito II*, Compl. ¶ 24—is rather perplexing. Fiorito would almost undoubtedly be entitled to service of process by officers of the court if he were to initiate his lawsuits in federal court, *see* 28 U.S.C. § 1915(d); service of nearly every other document following the initial pleading can be effected through mailing that document once, *see* Fed. R. Civ. P. 5(b); and postage is not a perishable good.

[6] And the Court must interpret such claims as arising under the FTCA, even where (as is the case here) the claimant seeks relief nominally under state law rather than under the FTCA. *See* 28 U.S.C. § 2679(d)(2).

when the act or omission occurred."). But Fiorito cannot seek relief under the FTCA unless he follows the FTCA's various procedural and substantive requirements, including the requirement of administrative exhaustion. *See* 28 U.S.C. § 2675(a). Defendants have moved for summary judgment on the grounds that Fiorito has not exhausted administrative remedies for his FTCA claims prior to initiating these lawsuits. If defendants are correct, the Court lacks jurisdiction over these claims.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

There is no genuine issue of fact regarding whether Fiorito had exhausted administrative remedies prior to initiating these lawsuits. Defendants have produced evidence that Fiorito had initiated eight FTCA administrative claims with the Federal Bureau of Prisons related to his time at FCI-Sandstone prior to bringing this litigation. *See Fiorito I*, Declaration of Jake Bush ("Bush Decl.") ¶ 35 [ECF No. 34]; Bush Decl. Ex. K [ECF No. 34-11]. Those administrative claims are considered exhausted after the agency

13

formally resolves the claim or after six months have passed, whichever comes first. *See* 28 U.S.C. § 2675(a). Fiorito does not contend, much less present evidence, that the Federal Bureau of Prisons had resolved his grievances before he filed these lawsuits, and the six-month window for the Federal Bureau of Prisons to make a final disposition of any of Fiorito's administrative claims had not yet expired when Fiorito filed suit. *See* Bush Decl. Ex. K. The fact that those six-month deadlines have *since* expired does Fiorito little good: A litigant must exhaust administrative remedies under the FTCA *before* filing suit, not after. *See McNeil v. United States*, 508 U.S. 106, 111-13 (1993).

This both starts and ends the analysis under the FTCA. Because Fiorito failed to exhaust administrative remedies for his state-law tort claims, the FTCA does not provide a waiver of sovereign immunity for those claims. The Court therefore lacks jurisdiction over those claims, which must be dismissed without prejudice.

### D. Remaining Issues

These actions will therefore be dismissed in their entirety, with the *Bivens* claims dismissed with prejudice pursuant to Rule 12(b)(6) and the FTCA claims dismissed without prejudice for lack of jurisdiction. Three other matters merit brief comment:

First, Fiorito has filed cross-motions for summary judgment in which he contends, broadly speaking, that he can present evidence supporting his version of events. But whether Fiorito's version of events is true or false is irrelevant to the grounds upon which the Court has disposed of his claims. What matters is not whether

Fiorito's allegations are true (the Court has assumed that they are), but whether those allegations fit within the increasingly narrow boundaries of *Bivens* (they do not) and whether Fiorito exhausted administrative remedies prior to seeking judicial relief under the FTCA (he did not).

Second, Fiorito has long contended that these lawsuits were not properly removed by defendants and therefore are not within this Court's jurisdiction, and he has filed motions to remand each of the proceedings.[7] This Court has already rejected Fiorito's prior motions to remand as frivolous, *see Fiorito I*, ECF No. 17 at 6-7, and his pending motion to remand—which relies entirely on arguments that have already been rejected by the Court—is no less frivolous.[8]

---

[7] The motion to remand identifies *Fiorito I*, *Fiorito III*, and the case that Fiorito voluntarily dismissed as the matters to be remanded, but in context it is clear that Fiorito seeks remand of *Fiorito II* rather than the case that has already been dismissed.

[8] Fiorito has repeatedly demanded that the United States file a certification pursuant to 28 U.S.C. § 2679(d)(2) that the defendants were acting within the scope of their employment at the time of the events at issue. Fiorito has also argued that, without the certification, these matters must be remanded to state court. "Courts have held, however, that formal certification is not required; a brief filed by the United States on behalf of defendant employees may serve as a petition to certify that they were acting within the scope of their employment." *Fernandini v. Samuels*, No. 1:15-CV-3843-GHW, 2017 WL 2544039, at *2 (S.D.N.Y. June 9, 2017) (collecting cases). The intervention of the United States into these proceedings also acts as sufficient certification under § 2679(d)(2). In any event, Fiorito's pleadings establish that each of the defendants were acting within the scope of their employment by the federal government during the events at issue; his claims of constitutional violations would make little sense otherwise, as a claimant can seek relief under *Bivens* only from federal actors.

15

Third, Fiorito has complained throughout these proceedings that he has not had access to various documents—documents filed by defendants, documents entered by the Court, and even documents filed by Fiorito himself (which Fiorito apparently did not retain and for which Fiorito has subsequently sought free copies at public expense). To the extent that Fiorito might later claim that he has not had an adequate opportunity to respond to defendants' arguments for dismissal and summary judgment, this Court notes that Fiorito's complaint is subject to 28 U.S.C. § 1915A, and the Court may invoke § 1915A at any time and without notice when it determines that a complaint—or any portion of a complaint—filed by a prisoner is frivolous, malicious, or fails to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915A(b).  Section 1915A would serve as a separate and independent procedural vehicle through which to dismiss Fiorito's claims under *Bivens*.  As for Fiorito's FTCA claims, the Court may raise jurisdictional issues *sua sponte* at any time; indeed, the Court *must* raise such issues when it has reason to believe that it may lack jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3). Fiorito has had more than enough opportunity and notice to respond adequately to defendants' motions to dismiss and for summary judgment.  But even if he hadn't, the Court would be entitled to act of its own accord.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

16

1.  Defendants' motions to dismiss and for summary judgment are GRANTED. Those motions are as follows:

    a.  *Fiorito v. Drummy*, No. 22-CV-0923 (PJS/TNL) [ECF No. 31].

    b.  *Fiorito v. Lilo*, No. 22-CV-0925 (PJS/TNL) [ECF No. 26].

    c.  *Fiorito v. Kensy*, No. 22-CV-0927 (PJS/TNL) [ECF No. 33].

2.  Plaintiff Michael Fiorito's motions for summary judgment are DENIED. Those motions are as follows:

    a.  *Fiorito v. Drummy*, No. 22-CV-0923 (PJS/TNL) [ECF No. 59].

    b.  *Fiorito v. Kensy*, No. 22-CV-0927 (PJS/TNL) [ECF No. 61].

3.  Fiorito's motions to remand are DENIED. Those motions are as follows:

    a.  *Fiorito v. Drummy*, No. 22-CV-0923 (PJS/TNL) [ECF No. 63].

    b.  *Fiorito v. Kensy*, No. 22-CV-0927 (PJS/TNL) [ECF No. 59].

4.  These actions are DISMISSED as follows:

    a.  Fiorito's claims of federal constitutional violations are DISMISSED WITH PREJUDICE.

    b.  Fiorito's claims of state-law violations are DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: June 15, 2023                               s/Patrick J. Schiltz_____
                                                                             Patrick J. Schiltz, Chief Judge
                                                                             United States District Court